# United States District Court
## Western District of Virginia
## Harrisonburg Division

|  |  |  |
|---|---|---|
| **DARLENE V. HINES,** | ) ) ) ) | Civil No.: 5:10cv00132 |
| *Plaintiff*, | ) ) | |
| v. | ) ) | **REPORT AND RECOMENDATION** |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) ) ) | By: Hon. James G. Welsh |
| *Defendant* | ) ) | U. S. Magistrate Judge |

    Darlene Hines brings this civil action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for a period of disability and disability insurance benefits ("DIB") [1] under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

    The record shows that the plaintiff protectively filed her application on March 11, 2008 alleging that she became disabled as of April 1, 1996 due to "arthritis, tumor on the brain, hyper thyroid, bowel syndrome, knee replacement, depression, acid refluc (*sic*), sjogrens immune disease, hernia and death (*sic*) in right ear and dizzy all the time, . . . and also have a tumor on the adrenaline (*sic*) gland, and kidney stones." (R.9,77-82,86,112). Her claim was denied both initially and on state agency reconsideration. (R.37-52). Following an administrative hearing

---

[1] The plaintiff's insured status for DIB expired September 30, 2007. (R.9,26,86).

(R.23-36), on February 16, 2010 the presiding administrative law judge ("ALJ") issued an essentially unfavorable decision. (R.9-17). The plaintiff's subsequent request for Appeals Council review was denied (R.1-8), and the unfavorable ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on April 27, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment, and each has filed a supporting memorandum of points and authorities. No request was made for argument.

### I. Summary and Recommendation

Using the agency's five-step evaluation process, the ALJ made the following pertinent determinations: (1) the plaintiff had not engaged in substantial gainful work activity during the decisionally relevant period from her alleged onset date of April 1, 1996 through her last insured date of September 30, 2007; (2) during this period the plaintiff's *severe* [2] impairments included degenerative joint disease of the knees with replacements in 2005 and 2008, Sjogren's syndrome (an autoimmune condition that affects moisture producing glands), hearing loss in the right ear

---

[2] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c).

after surgery to remove a vestibular schwannoma (a benign nerve sheath tumor), shoulder surgery in 2008, and obesity; (3) these impairments, neither individually nor in combination, were of sufficient severity to meet or medically equal an impairment listed in 20 U.S.C. pt. 404, subpt. P, appx. 1; (4) through December 31, 2007 the plaintiff had the residual functional capacity to perform a full range of light work and was not disabled on or before that date; (5) by application of Medical-Vocational Rule 201.10 beginning January 1, 2008, considering the plaintiff's significant shoulder injury, her vocational profile and her residual functional capacity, there are not a significant number of jobs in the national economy that she could perform; and (6) the plaintiff became disabled on January 1, 2008. (R.11-17).

On appeal the plaintiff advances three claims of decisional error by the ALJ. She challenges his reliance on the opinions of the state agency medical reviewers. She contends that he "failed to assess her obesity and her hearing loss as part of his residual functional capacity assessment," and she contends that he "failed" to prove the necessary evidentiary basis for his finding that her symptom-related testimony was not entirely credible. After a careful review of the full record, the undersigned concludes there is substantial evidence in the record to support each of the contested findings.

## II. Standard of Review

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial

3

evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

### III.     Evidence Summary

At the time the plaintiff alleges her disability began, she was forty years of age, and at the time her insured status expired she was nearly fifty-two years of age. (*See* R.26,86). She attended school through the tenth grade, and her relevant work experience was as a nursing assistant. (R.26-27,35,113-114). As regularly performed this job is considered exertionally medium and semi-skilled. (R.35).

The plaintiff's medical history shows that she had a total left knee replacement in late June 2005 following a two-year history of failed treatment that included a partial medial miniscectomy, multiple injections, and various pain medications. (R.210-214,225-226,302). She did "very well" following this surgery and she recovered without any complications. (R.218,273,300). Her medical records also document a history of Sjogren's syndrome and its symptomatic relief with medication treatment. (R.219,306)). Her records additionally document

4

her development of a slow-growing acoustic schwannoma that has twice required surgical intervention, the first time in late 1996 and more recently in 2002. (R.221-222,306). This condition has left her with no hearing in her right ear and with an inoperable part of the tumor that continues to grow slowly. (R.221,275-278).

The plaintiff's treatment records from her primary care physician (David Switzer, M.D.), beginning with a "get acquainted visit" in January 2005 and variously dated through November 17, 2007 show that he treated her conservatively for a number of non-acute and mainly transient medical problems, including poorly controlled hypertension, right-sided chest discomfort, renal stones and associated flank pain, non-cardiac-related chest pain, bronchitis, eczema, and gastrointestinal reflux disease. (R.219-220,281-282,291-294,297-299,303-307,336-338,343-344. 363-364).

Since the date she was last insured, the plaintiff has continued to see Dr. Switzer intermittently for various medical complaints, including a shoulder separation following a fall in early January 2008, asthma symptoms, fatigue, facial pressure and congestion. (R.291,332-334,464-466,469-470,473-480). Following her fall, the plaintiff was referred to Hess Orthopedic Center for treatment of her shoulder injury and subsequently for treatment of significant right knee pain and tenderness that she developed three months later. (R369-.382,395,486-493). Her shoulder separation was surgically repaired by Gregory Hardigree, M.D., at Rockingham Memorial Hospital in April 2008, and her right knee replacement surgery was performed by Thomas Brown, M.D., at University of Virginia Medical Center in October of the same year.

(R.347-349,363-364,402-403,421-462). Both surgeries achieved good results, and the plaintiff appears to have recovered without any complications. (*Id*.).

On May 30, 2008 a state agency physician reviewed the plaintiff's medical records and concluded that despite her multiple medical issues she retained the functional ability to perform a full range of light work through the date that her insured status expired. (R.408-415). On September 17, 2008 this assessment was reviewed by a second state agency physician and confirmed it "as written." (R.416-417).

More than two years after her insured status had expired, in a January 2010 medical assessment form completed by Dr. Brown, he opined that the plaintiff retained the ability to perform a limited range of sedentary work, but she would miss from three to five days of work each month due to her condition. (R.494-499).

**IV. Discussion**

**A.**

As the plaintiff correctly notes in her brief, the ALJ in this case gave significant decisional weight to the opinions of the state agency medical consultants indicating that the plaintiff was capable of light work through the date she was last insured. (*See* R.14). Her contention that these opinions were not based on "pertinent" evidence, however, is simply wrong. Her degenerative joint disease of the left knee, her total left knee replacement in 2005, and her attendant knee impairment were specifically considered. (R.409,414). The fact that the medical evidence "establishe[d]" impairments due to Sjogren's syndrome and hypertension were

6

considered. (*Id.*). The fact that the medical record disclosed only a minimal functional impact of her multiple other medical problems, including the mild enlargement of her heart's left atrium, was also considered (R.414). *See* 20 C.F.R. § 1545e). And it was noted that no treating or examining source had provided any statement regarding the plaintiff's limitations or restrictions. (R.413).

Given these specific and legitimate reasons based on credible evidence in the medical record, the assessments of the medical reviewers constitute substantial evidence. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (the opinion "of a non-examining physician can be relied upon when it is consistent with the record"). Moreover, as the Commissioner properly points-out in his brief, the ALJ was entitled to rely on opinions rendered by non-examining physicians when they are consistent, as they are in the instant case, with the record. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984; 20 C.F.R. § 404.1527(f); Social Security Regulation ("SSR") 96-6p.

**B.**

On review, the plaintiff's contention that the ALJ inadequately evaluated her obesity and her right ear hearing loss in making his residual functional capacity determination is equally without merit. It ignores the ALJ's finding that there was no credible evidence in the record to suggest the plaintiff was not able to ambulate effectively. (R.12). It ignores the ALJ's specific finding that there was similarly no credible evidence in the record to suggest that her obesity had either ever been disabling or ever caused another impairment to be disabling. (Id.). It ignores the ALJ's specific acknowledgment of the plaintiff's loss of hearing in her right ear and the absence of any hearing loss in her other ear. (*Id.*). It ignores the fact that her attorney suggested no

7

adverse functional impact of either condition by posing a pertinent question to the vocational witness. (R.35). It ignores the absence of anything in the medical record itself that suggests the plaintiff's obesity or her right ear hearing loss has either resulted in or exacerbated any significant limitation in her ability to perform work activities at a light exertional level. Moreover, on appeal she once again suggests no specific physical impairment that she contends has been exacerbated either by her weight or her right ear hearing loss, and she ignores the fact that obesity alone does "not correlate with any specific degree of functional loss." *See* SSR 02-1p.

Succinctly put, the medical record and the ALJ's relevant findings in this case more than adequately demonstrate that prior to the expiration of her insured status the plaintiff's obesity, as a condition, and her right ear hear loss, as a condition, did not contribute to her inability to work. *See Rutherford v. Barnhart*, 399 F,3$^d$ 546, 552-553 3rd Cir. 2005).

## C.

On appeal the plaintiff also argues that the ALJ's rejection of her pain and subjective symptom testimony was based on a mere recitation of various evaluation factors and an attendant failure by the ALJ to provide a minimally adequate decisional rationale. On review, this contention mischaracterizes the ALJ's credibility determination, and it fails to acknowledge the significant evidentiary support in the record for this credibility determination and the conclusion that the plaintiff was not disabled due to the non-exertional pain or other symptoms about which she testified.

In compliance with the agency's regulations, the ALJ in the instant case utilized the two-prong decisional process to make his credibility determination. (*See* R.12-13). First, he determined that there was objective medical evidence showing the existence of medical impairments, including degenerative joint disease of the knees, Sjogren's syndrome and morbid obesity, which could reasonably be expected to produce pain and the other alleged symptoms about which she testified. (R.14; *see* R.28-34). *Craig v. Chater*, 76 F.3$^d$ 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b) and 42 U.S.C. § 423(d)(5)(A)).

Then in accordance with the second decisional prong, the ALJ evaluated the "the intensity and persistence of the [plaintiff's] pain, and the extent to which it affected her ability to work." (R.13-14). *Craig* at 595. In doing so, he identified specific medical evidence that conflicted with her testimony of disabling pain and other non-exertional symptoms, including *inter alia* her successful knee replacement surgery in 2005, her ability to ambulate effectively before January 2008, the absence of any left ear hearing loss or any inability to communicate effectively, the absence of any evidence of significant immune system problems associated with her Sjogren's syndrome disorder, the "credible objective and subjective" evidentiary basis for the state agency medical assessments, and the plaintiff's demonstrated ongoing ability to perform part-time work as a nursing assistant from 2003 to 2008. (R.12,14,15,24-25,89-92,105-106,210-211,218,273,276,414).

Therefore, the ALJ appropriately assessed the plaintiff's statements concerning her pain and other subjective symptoms on the basis decisionally relevant factors, including most particularly the objective medical evidence and the scope of her activities. 20 C.F.R. §

9

404.1529(c); SSR 96-7p. It is supported by substantial evidence, and it more than adequately demonstrates the lack merit in the plaintiff's argument that he ALJ erred in his assessment of her credibility. Moreover, he had the opportunity to observe the demeanor and to determine her credibility; thus, his observations concerning this question are "to be given great weight." *Shively v. Heckler*, 739 F.2$^d$ 987, 989 (4th Cir. 1984).

### D.

In this case it merits mention that each of the plaintiff's claims of decisional error presented on appeal relies primarily on an implied contention that the ALJ improperly weighed the evidence. This court, however, must uphold the Commissioner's final decision if it is supported by substantial evidence. Although the plaintiff may disagree with the ALJ's determinations, the record demonstrates that his determinations were made after weighing the relevant factors. It is simply not the role of the court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3$^d$ at 589.

This recommendation that the Commissioner's final decision be affirmed, however, does not suggest that the plaintiff is totally free of pain and other subjective discomfort or did not have health issues prior to the expiration of her insured status. On review, however, the objective medical record simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision for the court to make in this case is "not whether the [plaintiff] is disabled, but whether the ALJ's non-disability finding is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it

is the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;
2. The ALJ's reliance on the opinions of non-examining state agency physicians was appropriate and consistent with the applicable agency regulations and rulings;
3. The opinions of the state agency physicians upon which the ALJ relied are supported by substantial evidence;
4. The plaintiff's obesity was evaluated by the ALJ in accordance with SSR 02-1p;
5. Substantial evidence supports the ALJ's conclusion that the plaintiff's obesity, as acondition, during the decisionally relevant period did not functionally limit her ability to engage in work activities of the type identified in his decision;
6. Substantial evidence in the medical record supports the ALJ's findings that prior to the expiration of her insured status the plaintiff's loss of right ear hearing as a condition did not contribute to her inability to work;
7. In his adjudication of the plaintiff's claims, the ALJ gave proper consideration to the objective and subjective evidence related to the plaintiff's pain and other subjective symptoms;
8. The ALJ properly resolved all decisionally relevant evidentiary conflicts;
9. The Commissioner met his burden of proving that before the expiration of her insured status the plaintiff possessed the residual functional ability to perform work which existed in significant numbers in the national economy;
10. The plaintiff has not met her burden of proving a disabling condition through the date she was last insured; and
11. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

### VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 7th day of March 2012.

                                                s/ *James G. Welsh*
                                                   United States Magistrate Judge